**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _________________

WEST COAST ATHLETIC, LLC,

Plaintiff,

v.

SET GK LLC,

Defendant.

---

# COMPLAINT

---

Plaintiff West Coast Athletic, LLC ("Plaintiff" or "West Coast") brings this action against Defendant SET GK LLC ("Defendant" or "SET GK") for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); unfair methods of competition and unfair or deceptive acts or practices under the Washington Consumer Protection Act, RCW 19.86.020; and unjust enrichment. Plaintiff seeks transfer of the bestcoastgoalkeeping.com domain name, preliminary and permanent injunctive relief, Defendant's profits, Plaintiff's actual damages or, at its election, statutory damages, enhanced and increased damages, restitution and disgorgement, attorneys' fees, costs, and interest, and hereby alleges as follows:

## THE PARTIES

1. Plaintiff is a Washington limited liability company with a principal place of business at 23220 Maple Valley Black Diamond Road Southeast, Suite 3A, Maple Valley, Washington 98038.

2. On information and belief, Defendant is a Colorado limited liability company with a principal place of business at 2960 Inca Street, Suite 501, Denver, Colorado 80202.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121 because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. § 1051 et seq., including the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Defendant is a Colorado limited liability company with its principal place of business in Denver, Colorado, and is subject to personal jurisdiction in this District. 28 U.S.C. § 1391(c)(2). Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. On information and belief, Defendant, from Colorado, registered, maintains, and operates the domain name bestcoastgoalkeeping.com (the "BCG Domain")., using a registrant mailing address in

Colorado; operates the website at the BCG Domain and its setgk.com business; and directs the promotional activity, including paid influencer promotions, that diverts consumers searching for Plaintiff's brand to Defendant.

5. This Court has general personal jurisdiction over Defendant because Defendant is a Colorado limited liability company with its principal place of business in Denver, Colorado, and is therefore at home in this State. This Court also has specific personal jurisdiction over Defendant because Plaintiff's claims arise out of Defendant's conduct in Colorado. On information and belief, Defendant registered and maintains the BCG Domain from Colorado, using a registrant mailing address in Colorado, and operates the BCG Domain, setgk.com, and the related promotional activity at issue in this action from Colorado. Exercising jurisdiction over Defendant is reasonable and comports with fair play and substantial justice.

## FACTUAL BACKGROUND

### A. West Coast Goalkeeping and the WEST COAST GOALKEEPING Mark

6. Plaintiff, founded in the Seattle area, designs, markets, and sells goalkeeper gloves, soccer balls, goalkeeper jerseys, padded base layers, training equipment, socks, and other soccer apparel and equipment under the WEST COAST GOALKEEPING mark (the "WCG Mark").

7. Plaintiff has continuously used the WCG Mark in interstate commerce for nearly fifteen years, since at least as early as 2011. Plaintiff owns and operates the website located at westcoastgoalkeeping.com (the "WCG Domain"), through which it

markets and sells WEST COAST GOALKEEPING products to consumers throughout the United States and worldwide.

8. Plaintiff markets itself, and is widely recognized, as North America's largest dedicated goalkeeping outfitter. Plaintiff has grown from a start-up into one of the top soccer brands, with significant annual sales.

9. WEST COAST GOALKEEPING branded products are worn at the highest levels of the sport. More than 100 professional goalkeepers in Major League Soccer ("MLS"), the National Women's Soccer League ("NWSL"), the USL, the English Premier League, and other top leagues have worn and continue to wear WEST COAST GOALKEEPING gloves. Members of Plaintiff's "Pro Team" have worn WEST COAST GOALKEEPING gloves at the FIFA World Cup, including at the 2023 FIFA Women's World Cup. Professional goalkeepers who have worn Plaintiff's products include U.S. Men's National Team goalkeeper Matt Turner and NWSL Goalkeeper of the Year Kailen Sheridan. (*See*, *e.g.*, https://www.westcoastgoalkeeping.com/pages/pro-team-update.)

10. The WCG Mark and Plaintiff's products have also reached broad, popular audiences. WEST COAST GOALKEEPING gloves have appeared in EA Sports' FIFA and EA SPORTS FC video game franchises, which are played by millions of consumers. Plaintiff's gloves were also featured throughout Season 3 of the Emmy Award-winning television series *Ted Lasso*, where they were worn by the AFC Richmond goalkeeper in nearly every episode.

11. WEST COAST GOALKEEPING products are sold through more than 250 retailers throughout the United States, including major national and regional sporting

goods retailers and specialty soccer retailers, as well as through Plaintiff's website and mobile application.

12. Because of nearly fifteen years of continuous and substantially exclusive use, extensive sales, professional endorsements, and widespread unsolicited media exposure, the WCG Mark is distinctive and/or has acquired substantial secondary meaning. Among goalkeepers, coaches, parents, retailers, and the broader soccer community, the WCG Mark is a well-known name that consumers associate exclusively with Plaintiff.

13. The WCG Mark was distinctive, and had acquired secondary meaning, by no later than January 12, 2022. The BCG Domain was registered on January 12, 2022, more than ten years after Plaintiff began using the WCG Mark. By way of example only, by 2022, West Coast had sold gloves around the world, had partnered with several professional goalkeepers, and was an outfitter for professionals in at least the following leagues: MLS, USL, NASL, FA Cup, NWSL, La Liga, SPL, Irish Airtricity, SkyBet Championship, and Skrill Pro, League 1. In addition, a summary of reviews and testimonials from a soccer article in 2022 noted that "West Coast Goalkeeping" was "consistently the most recommend pair by a land slide."

**B. Defendant and Its Principal's Prior Endorsement Relationship with Plaintiff**

14. Defendant's principal, Eric Klinoski, was formerly retained by Plaintiff as an independent endorsee of Plaintiff's products. In his role as a compensated endorsee, Mr. Klinoski gained intimate familiarity with the WCG Mark, Plaintiff's branded products, and the goodwill and market strength of the WCG Mark.

15. On information and belief, after his endorsement relationship with Plaintiff ended, Mr. Klinoski founded Defendant and launched the website located at setgk.com. According to publicly available WHOIS registration data, the setgk.com domain was registered on May 10, 2021, through the registrar Squarespace Domains II LLC, by a registrant whose mailing address is in Colorado. **Exhibit A**. Through setgk.com, Defendant sells products that directly compete with Plaintiff's, including goalkeeper gloves, soccer balls, training equipment, shirts, socks, and other apparel, to customers throughout the United States, including in this District.

**C. Defendant's Bad-Faith Registration and Use of bestcoastgoalkeeping.com**

16. On information and belief, Defendant registered, and now owns and operates, the BCG Domain. According to publicly available WHOIS registration data, the BCG Domain was registered on January 12, 2022, through the registrar Squarespace Domains II LLC, by a registrant whose mailing address is in Colorado. **Exhibit B**. The registrant's name, organization, and contact information are withheld from the public WHOIS record. *Id.* The registration was most recently updated on December 28, 2025, and has been renewed through January 12, 2027, reflecting Defendant's continued maintenance of the BCG Domain. *Id.*

17. The BCG Domain is confusingly similar to the WCG Mark and the WCG Domain. It copies Plaintiff's mark, and Plaintiff's westcoastgoalkeeping.com domain, letter for letter except for replacing the single letter "W" with "B" in the first word. The words "best" and "west" rhyme and sound substantially similar. The BCG and WCG domain names look substantially similar and both are used in the same field selling

competing products. This substitution of a single letter is the kind of minor alteration that consumers are likely to overlook.

18. On information and belief, the BCG Domain went live on or before March 2023. The website at the BCG Domain is a duplicate, or at least a near-duplicate, of Defendant's setgk.com website. It displays the same images, text, video, and product offerings; the same navigation tabs, including "Blogs," "Our Story," and "Coaches"; and the same privacy policy and terms of service as setgk.com. The website at the BCG Domain contains no disclaimer of any affiliation with Plaintiff.

19. Defendant already operates its business through setgk.com. Therefore, Defendant has no legitimate business reason to maintain a duplicate of its own website at a domain that mimics the WCG Mark. On information and belief, the only reason to maintain such a website is to confuse consumers and divert traffic intended for Plaintiff to Defendant.

20. Both setgk.com and the BCG Domain were registered through the same registrar, Squarespace Domains II LLC (IANA ID 895), by a registrant with a mailing address in Colorado, where Defendant is headquartered. **Exhibits A & B**. Both domains use the same Google Cloud DNS name-server infrastructure (googledomains.com name servers), and both registrations withhold the registrant's identity from public view in the same manner. *Id.* The BCG Domain was registered on January 12, 2022, approximately eight months after setgk.com was registered on May 10, 2021. *Id.*

21. The setgk.com domain identifies the BCG Domain in its source code.

22. On information and belief, Defendant has told retailers that it uses the BCG Domain to funnel consumer traffic to Defendant's SET GK business. In doing so, Defendant capitalizes on consumers' association of the BCG Domain with the WCG Mark to divert business from Plaintiff to Defendant.

23. On information and belief, Defendant pays social media "influencers" to promote the BCG Domain. These influencers appear to insert the BCG Domain into online conversations about goalkeeper gloves. Specifically, West Coast recently learned that posts in which the WEST COAST GOALKEEPING brand is tagged include, at times, another comment with a direction to consumers to buy gloves at the BCG Domain. For example, West Coast recently found a post where Plaintiff's "@westcoastgk" handle was tagged in a post and a third party—with no otherwise apparent tie to any soccer brand—joined the conversation to state "find the best gloves at bestcoastgoalkeeping.com." On information and belief, actions like this have caused and are likely to continue to cause confusion.

24. On information and belief, consumers have been misled and confused by Defendant's use of the BCG Domain. Consumers searching for, or engaging with social media content about, WEST COAST GOALKEEPING have followed links to, or typed in, the BCG Domain believing it to be Plaintiff's website or a site affiliated with or approved by Plaintiff. On information and belief, some of those consumers have purchased, or considered purchasing, Defendant's goods believing them to originate with, or be sponsored or approved by, Plaintiff, and others have been left uncertain whether SET GK is affiliated with Plaintiff.

25. Plaintiff has never authorized Defendant to use the WCG Mark, or any confusingly similar term, in a domain name or otherwise.

**D. Defendant's Bad-Faith Intent to Profit from the WCG Mark**

26. Defendant registered and used the BCG Domain with a bad-faith intent to profit from the WCG Mark and its goodwill, as shown by, among other things, the factors set forth in 15 U.S.C. § 1125(d)(1)(B)(i).

27. Defendant has no trademark or other intellectual property rights in the term "bestcoastgoalkeeping" or "Best Coast Goalkeeping." The BCG Domain is not Defendant's legal name or a name by which Defendant is commonly known. Defendant does business as SET GK. Defendant has made no prior use of the BCG Domain in connection with the bona fide offering of any goods or services, and its use of the BCG Domain is not a bona fide noncommercial or fair use. 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IV).

28. Defendant, through Mr. Klinoski, had actual, prior knowledge of the WCG Mark and its strength from Mr. Klinoski's role as a compensated endorsee of Plaintiff. Defendant deliberately chose a domain name that differs from the WCG Mark by a single letter.

29. Defendant intended to, and on information and belief does, divert consumers from Plaintiff's online location to a site accessible under the BCG Domain that harms the goodwill of the WCG Mark, both for commercial gain and by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of that site. 15 U.S.C. § 1125(d)(1)(B)(i)(V).

30. Defendant uses the BCG Domain to promote directly competing products. Through paid influencers who target online discussions tagging the WEST COAST GOALKEEPING brand, Defendant intercepts and redirects consumers who are searching for Plaintiff's brand, suppressing those consumers' efforts to find Plaintiff and its products.

31. Defendant did not believe, and had no reasonable grounds to believe, that its use of the BCG Domain was a fair use or otherwise lawful. 15 U.S.C. § 1125(d)(1)(B)(ii).

**E. Defendant's Willful Conduct Makes This an Exceptional Case**

32. Defendant's conduct is willful. Because of Mr. Klinoski's prior role as a compensated endorsee of Plaintiff, Defendant had direct, personal knowledge of the WCG Mark, its strength, and its goodwill when it registered and began using the BCG Domain.

33. Defendant's conduct was deliberate and calculated, not inadvertent. Defendant registered a domain name that differs from the WCG Mark by a single letter, creating a domain that sounds and looks substantially similar to Plaintiff's WCG Domain. Defendant built a mirror of its own website at that domain. It told retailers that it uses the domain to funnel traffic to its business. It paid influencers to insert the domain into conversations about Plaintiff's brand. Together, these acts reflect a coordinated scheme to trade on Plaintiff's goodwill.

34. Defendant's scheme was designed to exploit and ultimately supplant the WCG Mark's recognition in the marketplace, and to appropriate for Defendant the customer goodwill that Plaintiff has built over nearly fifteen years.

35. Considering the totality of the circumstances, including the substantive strength of Plaintiff's position and the unreasonable and willful manner in which Defendant has acted, this is an exceptional case under 15 U.S.C. § 1117(a), and Plaintiff is entitled to reasonable attorneys' fees. Plaintiff is further entitled to an award of up to three times its actual damages, and to an adjustment of Defendant's profits, as necessary to compensate Plaintiff fully for Defendant's willful conduct.

36. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost sales, consumer confusion, and irreparable harm to the goodwill of the WCG Mark, for which there is no adequate remedy at law.

## COUNT I – ANTI-CYBERSQUATTING (15 U.S.C. § 1125(D))

37. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

38. This Count is brought by Plaintiff West Coast Athletic, LLC, the owner of the WCG Mark, against Defendant SET GK LLC under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

39. Plaintiff owns the WCG Mark and has used it continuously in interstate commerce since at least as early as 2011, in connection with goalkeeper gloves, soccer balls, jerseys, base layers, training equipment, socks, and other soccer apparel and equipment. Plaintiff's use of the WCG Mark began long before Defendant registered the BCG Domain.

40. The WCG Mark is distinctive and/or has acquired distinctiveness through nearly fifteen years of continuous and substantially exclusive use, extensive sales through

more than 250 retailers and to individuals across the United States and the world, use by professional goalkeepers in multiple leagues, including Major League Soccer and other top leagues. More recently, it has also enjoyed appearances in the FIFA World Cup, EA Sports video games, and on *Ted Lasso*. The WCG Mark was distinctive at the time Defendant registered the BCG Domain.

41. On information and belief, Defendant registered the BCG Domain on January 12, 2022, through the registrar Squarespace Domains II LLC, using a registrant mailing address in Colorado, and has used the BCG Domain since at least March 2023. **Exhibit B**. On information and belief, Defendant is either the initial registrant of the BCG Domain or the registrant's authorized licensee.

42. The BCG Domain is confusingly similar to the WCG Mark. It reproduces the WCG Mark in its entirety except for substituting the single letter "B" for "W," so that the rhyming, visually similar word "best" replaces "west" while the distinctive phrase "coast goalkeeping" is retained. Adding the top-level domain ".com" does nothing to distinguish the BCG Domain from the WCG Mark.

43. On information and belief, Defendant registered and used the BCG Domain with a bad faith intent to profit from the WCG Mark at least because:

- Defendant has no trademark or other intellectual property rights in the BCG Domain or in the term "Best Coast Goalkeeping";
- On information and belief, the BCG Domain is not Defendant's legal name or a name by which Defendant is commonly known, because Defendant does business as SET GK;
- On information and belief, before registering the BCG Domain, Defendant had made no use of it in connection with the bona fide offering of any goods

or services, and Defendant made no such use prior to Plaintiff's initial use of the distinctive WCG mark;

- Defendant's use of the BCG Domain is commercial and is not a bona fide noncommercial or fair use;

- On information and belief, Defendant intends to divert consumers from Plaintiff's online location, westcoastgoalkeeping.com, to a website accessible under the BCG Domain that harms the goodwill of the WCG Mark, which Defendant does for commercial gain and by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of its products and website;

- But for the BCG Domain and the confusion it creates, many consumers seeking Plaintiff would never have viewed Defendant's products or given Defendant the opportunity to make a sale;

- On information and belief, Defendant has told retailers that it uses the BCG Domain to funnel consumer traffic to its business.

- On information and belief, Defendant pays social media influencers to insert the BCG Domain into conversations in which the WEST COAST GOALKEEPING brand is tagged;

- Defendant selected the BCG Domain with actual knowledge of the WCG Mark and its strength, gained through its principal Mr. Klinoski's prior role as a compensated endorsee of Plaintiff. Defendant uses the BCG Domain only to host a near-duplicate of its own setgk.com website, which serves no purpose other than to capture consumers looking for Plaintiff; and

- The WCG Mark is distinctive.

44. Defendant did not believe, and had no reasonable grounds to believe, that its use of the BCG Domain was a fair use or otherwise lawful. The safe harbor of 15 U.S.C. § 1125(d)(1)(B)(ii) therefore does not apply.

45. Defendant's violation of 15 U.S.C. § 1125(d)(1) was and is willful.

46. Under 15 U.S.C. § 1125(d)(1)(C), Plaintiff is entitled to an order directing that the BCG Domain be transferred to Plaintiff or, alternatively, forfeited or cancelled.

47. Under 15 U.S.C. § 1117(a) and (d), Plaintiff is entitled to recover Defendant's profits, Plaintiff's actual damages, and costs. Alternatively, at Plaintiff's election at any time before final judgment, Plaintiff may recover statutory damages under 15 U.S.C. § 1117(d) in an amount of not less than $1,000 and not more than $100,000 per domain name, as the Court considers just. Plaintiff further requests that the Court find this to be an exceptional case and award reasonable attorneys' fees under 15 U.S.C. § 1117(a).

48. Defendant's conduct has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff and the goodwill of the WCG Mark, for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116. Upon a finding of a violation under 15 U.S.C. § 1125(a) or (d) for a permanent injunction, or upon a finding of likelihood of success on the merits of such a violation for a preliminary injunction, Plaintiff is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a).

## COUNT II – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(A))

49. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

50. Plaintiff owns protectable rights in the WCG Mark, which is distinctive and has been used continuously in interstate commerce since at least as early as 2011, long before Defendant began using the BCG Domain.

51. Defendant has used, and continues to use, the BCG Domain in commerce, without Plaintiff's consent, in connection with the advertising, offering for sale, and sale

of goods. Defendant's use is not passive. Defendant uses the BCG Domain to host a website offering for sale goalkeeper gloves, soccer balls, training equipment, and apparel that directly compete with Plaintiff's goods. Defendant promotes the BCG Domain through paid social media influencers. On information and belief, Defendant has described the BCG Domain to retailers as a means of funneling consumer traffic to its business.

52. Defendant's use of the BCG Domain is likely to cause, and on information and belief has caused, confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendant's goods. The BCG Domain is nearly identical in sight and sound to the WCG Mark and Domain. The WCG Mark is strong and has substantial secondary meaning. The parties sell identical goods to the same consumers through the same online and retail channels. Both parties use the Internet as a principal marketing channel. Goalkeeper gloves and similar goods are frequently purchased online, often by parents and young athletes, without extended deliberation. Defendant chose the BCG Domain with knowledge of the WCG Mark and Domain and with the intent to divert or confuse Plaintiff's customers. On information and belief, consumers have in fact been confused, including consumers who reached the BCG Domain through links placed in conversations about the WEST COAST GOALKEEPING brand believing they were dealing with Plaintiff or a company affiliated with Plaintiff.

53. In addition, and in the alternative, Defendant's use of the BCG Domain causes initial interest confusion. Consumers who type, click, or follow a link to the BCG Domain, including links that Defendant's paid influencers place in conversations about

the WEST COAST GOALKEEPING brand, are likely to believe they are going to a site owned by, affiliated with, or approved by Plaintiff. Because “best” and “west” sound alike, consumers who hear or recall Plaintiff’s name may type the BCG Domain believing it to be Plaintiff’s. When those consumers arrive, the website at the BCG Domain does not disclaim any affiliation with Plaintiff. Even to the extent any consumer’s confusion is later dispelled, Defendant has by then captured the attention of consumers seeking Plaintiff and obtained the opportunity to sell its competing goods to them, which many of those consumers would not otherwise have given Defendant.

54. Defendant’s conduct is willful. It has caused and will continue to cause Plaintiff lost sales, damage to its goodwill, and irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116. It is also entitled under 15 U.S.C. § 1117(a) to Defendant’s profits, Plaintiff’s damages, enhanced damages, costs, and, because this is an exceptional case, reasonable attorneys’ fees.

## COUNT III – VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86.020)

55. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

56. Defendant’s registration and use of the BCG Domain, its use of that domain to divert consumers seeking Plaintiff’s products, and its paid influencer promotions directing consumers who engage with the WEST COAST GOALKEEPING brand to the BCG Domain are unfair methods of competition and unfair or deceptive acts or practices

under RCW 19.86.020. These acts have the capacity to deceive a substantial portion of the public as to the source, sponsorship, or affiliation of Defendant's website and goods.

57. Defendant's acts occurred in trade or commerce, within the meaning of RCW 19.86.010(2). They were committed in connection with the advertising and sale of goods to consumers in Washington and throughout the United States.

58. Defendant's acts affect the public interest. Defendant committed them in the course of its business and directed them at the general consuming public, including Washington consumers, through a publicly accessible website and social media promotions. Defendant's acts injured other persons and had and have the capacity to injure other persons within the meaning of RCW 19.86.093. On information and belief, Defendant's paid influencer posts promoting the BCG Domain have been published on social media platforms, including Instagram. Also on information and belief, Defendant has maintained the BCG Domain since January 2022 and has operated a website at the BCG Domain since at least March 2023. Defendant's conduct is part of a pattern of continuing conduct, not an isolated private dispute, and it is likely to deceive additional consumers. Members of the public are harmed when they are misled into dealing with a company other than the one they sought.

59. Defendant's acts have injured Plaintiff in its business and property, including through lost sales, diverted consumer traffic, and harm to the goodwill of the WCG Mark. Defendant's acts create initial interest confusion. But for the BCG Domain and that confusion, many consumers seeking Plaintiff and its products would not have visited Defendant's website, viewed Defendant's products, or given Defendant the opportunity

to make a sale. Plaintiff's injuries were proximately caused by Defendant's unfair and deceptive acts, and they would not have occurred but for those acts.

60. Under RCW 19.86.090, Plaintiff is entitled to injunctive relief, actual damages, and its costs of suit, including reasonable attorneys' fees, and the Court may in its discretion increase the award of damages up to three times the actual damages sustained.

## COUNT IV – UNJUST ENRICHMENT

61. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

62. Through the conduct described above, Defendant received a benefit at Plaintiff's expense. Plaintiff's investment over nearly fifteen years in the WCG Mark generates consumer demand, including consumers who search for, follow, or engage with content about WEST COAST GOALKEEPING. Through the BCG Domain and its paid influencer promotions, Defendant acquired prospective customers whose search for WEST COAST GOALKEEPING was driven by Plaintiff's goodwill, and who would not otherwise have encountered Defendant. On information and belief, Defendant converted some portion of those diverted consumers into sales opportunities and sales for SET GK, and obtained the resulting traffic, revenue, profits, and customer relationships.

63. Defendant was aware of, appreciated, and knowingly accepted that benefit. Through Mr. Klinoski's prior role as a compensated endorsee of Plaintiff, Defendant knew that the goodwill it was exploiting belonged to Plaintiff. On information and belief, Defendant told retailers that it uses the BCG Domain to funnel consumer traffic to its

business, and it paid influencers to redirect consumers engaging with posts tagging the WEST COAST GOALKEEPING brand.

64. The circumstances make it unjust for Defendant to retain the benefit without paying for its value. Defendant obtained the benefit through a deliberate scheme of deception and diversion: a domain differing from the WCG Mark by one letter, a copy of Defendant's own website, and paid influencer promotions aimed at Plaintiff's customers. Plaintiff did not consent to, and received no compensation for, Defendant's use of its goodwill.

65. No contract between Plaintiff and Defendant governs the subject matter of this claim.

66. Plaintiff lacks an adequate remedy at law for this claim, especially to the extent Plaintiff's other claims fail. Plaintiff is entitled to restitution and disgorgement of the benefits Defendant unjustly obtained, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff West Coast Athletic, LLC prays for judgment against Defendant SET GK LLC as follows:

A. An order directing that the BCG Domain be transferred to Plaintiff;

B. Preliminary and permanent injunctive relief under 15 U.S.C. § 1116 and RCW 19.86.090 enjoining Defendant, and all persons acting in concert with it, from using the BCG Domain, the WCG Mark, or any confusingly similar designation, and from paying or directing others to promote any such designation;

C. Defendant's profits, Plaintiff's actual damages, and enhanced damages under 15 U.S.C. § 1117(a), or, at Plaintiff's election before final judgment, statutory damages of up to $100,000 under 15 U.S.C. § 1117(d);

D. Actual and increased damages under RCW 19.86.090, and restitution and disgorgement of Defendant's unjust enrichment;

E. A finding that this is an exceptional case;

F. An award of reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) and RCW 19.86.090, and pre- and post-judgment interest; and

G. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: November 19, 2026

*/s/ Christopher J. Dawes*

Christopher J. Dawes, Atty. No. 33818
Katelyn Cramp, Atty. No. 60116
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202
(303) 292-1200
cdawes@foxrothschild.com
kcramp@foxrothschild.com

*Counsel for Plaintiff West Coast Athletic, LLC*